552

Walter C. PHILLIPS, Regional Director of the Tenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED MINE WORKERS OF AMERICA, DISTRICT 19, United Mine Workers of America, Pocket Local 7083, and United Mine Workers of America, Palmer Local 5881, Respondents.

Civ. No. 4067.

United States District Court
E. D. Tennessee, S. D.

May 7, 1963.

Charles B. Slaughter, Atlanta, Ga., for petitioner.

Willard P. Owens, Washington, D. C., for United Mine Workers of America and District 19.

E. H. Rayson, Knoxville, Tenn., for District 19, Local 7083 and Local 5881.

FRANK W. WILSON, District Judge.

This case is before the Court upon the petition of the National Labor Relations Board seeking a temporary injunction, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (29 U.S.C.A. § 160(*l*), pending a final disposition of charges now before the Board that the respondent Union has engaged in and is engaging in an unfair labor practice by conducting organizational and recognitional picketing in violation of Section 8(b) (7) (C) of the Act. A petition was filed by the Regional Director of the Tenth Region of the National Labor Relations Board upon March 12, 1963 and a show cause order thereon was duly issued. The petition alleges that the Grundy Mining Company has filed the unfair labor practice charges against the respondent unions, claiming that it is the object of illegal picketing.

The basic issue presented to the Court is whether there is reasonable cause to believe that the respondents have each engaged in the unfair labor practice charged and whether the issuance of a temporary restraining order under Section 10(*l*) would be just and proper.

A hearing was held upon the petition and show cause order upon March 21 and 22, 1963. A stipulation of additional facts relating to jurisdiction has been filed since the hearing. Upon the basis of the record in the cause the following facts appear to be undisputed:

Grundy Mining Company, a Tennessee corporation with offices at Tracy City, Tennessee and hereinafter referred to merely as "Grundy", is a wholly owned subsidiary of Tennessee Consolidated Coal Company, hereinafter referred to as "Consolidated", and is engaged in the business of mining coal in the coal fields of Southeastern Tennessee. During the calendar year 1962 Grundy sold coal valued in excess of $300,000 to its parent company, Consolidated, which in turn sold and shipped coal valued at more than $1,000,000 directly to points outside of the State of Tennessee. The principal, if not the sole, destination of the Grundy coal was the Widow's Creek Steam Plant belonging to the Tennessee Valley Authority and located near Bridgeport, Alabama. The respondents, United Mine Workers of America, District 19, United Mine Workers of America, Pocket Local 7083, and United Mine Workers of America, Palmer Local 5881, hereinafter referred to as "District 19, Local 7083, and Local 5881" respectively when individually referred to and as "UMW" when collectively referred to, are labor organizations and at all times material to these proceedings have been engaged in this judicial district in transacting business and in promoting and protecting the interests of employee-members. Local 7083 and Local 5881 are located in Marion County, Tennessee within the area of District 19.

As a background to these proceedings, it appears that Consolidated owns extensive coal lands within the Southeastern

Tennessee coal fields. Sometime prior to 1962 Consolidated contracted with Allen & Garcia Company for the operation of a mechanized mine designated the Coal Valley Mine. This mine was operated by Allen & Garcia under a collective bargaining agreement with District 19 and Local 5881. A fault caused this mine to be closed in June of 1962. Consolidated thereupon authorized Allen & Garcia to open up a mechanized mine known as the "No. 11 Mine" in the Gray's Creek area, which operation continued under the same collective bargaining agreement. Upon August 21, 1962, Allen & Garcia gave 60 days' notice to District 19 of termination of the union contract. Thereafter, upon September 21, 1962, Allen & Garcia gave notice to Consolidated of the termination of its contract for operation of No. 11 Mine. In the meantime, Grundy Mining Company, beginning in August of 1962, had opened seven hand loading mines in the Gray's Creek area, having a total of some 75 or 85 employees. These small mines were not operated under a collective bargaining agreement. Upon termination by Allen & Garcia, and effective as of September 22, 1962, Consolidated turned over to Grundy Mining Company the operation of the No. 11 mechanized mine.

In the meantime, on September 10, 1962, prior to any knowledge that Allen & Garcia proposed to terminate its operation contract on No. 11 Mine, District 19 filed a petition for certification under Section 9 of the National Labor Relations Act in which it sought an election at the Allen & Garcia Mine. Upon Grundy taking over the operation of No. 11 Mine, the certification petition was amended to describe Grundy, rather than Allen & Garcia, as the employer of the employees involved. This amendment occurred under date of October 13, 1962. In the meantime, an unfair labor practice charge was filed by Grundy against the UMW upon October 5, 1962. This remained pending until it was waived by Grundy upon January 16, 1963, thereby blocking any NLRB hearing upon the certification petition until after the lat-

ter date. Shortly after Grundy took over the operation of No. 11 Mine it advised District 19 that it would honor the remaining term of the collective bargaining agreement between Allen & Garcia and the Union, but that after the expiration of this agreement upon October 24, 1962 it would no longer operate under the agreement. Furthermore, upon October 10 officials of Grundy met with representatives of District 19 and advised District 19 that at such time as the UMW unions were certified as the collective bargaining representative of Grundy's employees after a Board election, Grundy would then recognize and bargain with the United Mine Worker unions.

During the fall of 1962 there was one or more work stoppages at the Grundy Mines, but these appear to have been resolved, at least upon a temporary basis. However, upon December 26, 1962 a work stoppage occurred at No. 11 Mine and picketing of this mine began. Responsibility for this picketing has been denied by each of the respondent unions. However, it is undisputed that the picketing did continue at all times thereafter until the date of the hearing and has effectively terminated not only the operation of No. 11 Mine, but also the small mines operated by Grundy in the Gray's Creek area, all of which mines come within the jurisdiction claimed by Local 5881. As of December 27, 1962 the picketing and resulting work stoppage spread to the Pocket Area in which are located mines over which jurisdiction is claimed by Local 7083. Both the Gray's Creek area and the Pocket Area are located in Marion County, Tennessee in adjacent valleys. The only highway access to both areas is by way of Pocket Road at its point of departure from Highway 108. At a point on Pocket Road about one mile from Highway 108 Access Road branches off of Pocket Road in an area designated as Dogwood Flats. Access Road leads into the Gray's Creek area.

Not only is the responsibility of the respondent unions for the picketing begun on or after December 26, 1962 disputed, but the cause, purpose and object

of the picketing are all highly disputed matters. As is stated above, it is undisputed, however, that the petition for certification filed September 10, 1962, and amended October 13, 1962, remained pending, as did the unfair labor practice charge filed by Grundy upon October 5, 1962.

As likewise stated above, upon January 16, 1963 the unfair labor practice charges filed by Grundy were waived and thereupon a hearing was scheduled upon January 30, 1963 upon the petition for certification. Upon January 28, 1963 District 19 moved to be allowed to withdraw its certification petition without prejudice and this motion was allowed by the NLRB upon January 29, 1963. The reasons advanced by the Union for withdrawal of the petition involved consideration of changes with regard to the appropriate bargaining unit and matters of inconvenience or conflict with the scheduled hearing date.

■ Upon February 18, 1963 Grundy filed charges against the respondents asserting that respondents were picketing its operations in violation of Section 8(b) (7) (C) of the Act, which charges form the basis of this suit. Upon February 21, 1963 District 19 delivered unto an NLRB official for filing a new petition for certification in which the proposed bargaining unit consisted of all coal operators belonging to an organization known as the Sewanee Coal Operators Association, and including Grundy. The Sewanee Coal Operators Association was an association of coal operators in the Southeastern Tennessee coal fields formed in September or October of 1962 for the collective bargaining purposes. The above referred to certification petition was filed under date of February 25, 1963.

The foregoing matters are undisputed in the record.

Returning now to the disputed matters, it is contended by the Board and disputed by the Union: (1) that District 19, Local 5881, and Local 7083 were and are each responsible for the picketing of Grundy

that has occurred from and after December 26, 1962, (2) that the said picketing has had as an object union representation and certification, and (3) that the picketing begun upon December 26, 1962 continued without a petition for certification being filed within a reasonable period of time not to exceed 30 days, and therefore constituted an unfair labor practice under Section 8(b) (7) (C).

Taking up the disputed matters in the order stated above, it is the opinion of the Court and the Court so finds that the weight of the evidence establishes that each of the respondents is legally responsible for the picketing against Grundy that has occurred from and after December 26, 1962. It appears clear that Local 5881 is responsible for the picketing. It claims jurisdiction over the Grundy mines. Its officers and members have at all times actively participated in, ratified, and supported the picketing. Mere failure of the record to show formal union endorsement of the picketing does not alter the inescapable conclusion that Local 5881 has at all times approved, sponsored, and supported the picketing, if not having initiated it. Concerted action by the officers and membership is more effective evidence of commitment by the Local than would be ballots or written minute entries.

Likewise does it appear that District 19 is responsible for the picketing of Grundy. It is undisputed that Howard Madewell was the field representative of District 19 and that, as such, District 19 was bound by his action in the course of his employment. Although it is denied by Mr. Madewell that he has advised, supported, or ratified the picketing, the Court is of the opinion that the weight of the credible evidence is to the contrary and that he has at all times both supported and ratified the picketing. The evidence establishes to the satisfaction of the Court that Mr. Madewell, in soliciting union membership among Grundy employees since the picketing began has at all times urged them to "respect the picket line." It further appears to the satisfaction of the Court that dis-

trict funds have been used in support of the picketing and to induce Grundy employees to join the Union and cease crossing the picket line to work. Even its failure to issue instructions that the picketing be stopped speaks of its support, when considered in light of all the evidence and when considered in light of its action in filing for certification. See Selby-Batterby & Co. v. NLRB, 4 Cir., 259 F.2d 151; West Seattle Dodge, Inc., 125 N.L.R.B. 729, General Ore, Inc., 124 N.L.R.B. 626.

Finally, it appears to the Court that there is sufficient evidence to warrant a finding of reasonable cause to believe that Local Union 7083 is responsible for the picketing. Although Local 7083 does not claim any jurisdiction over the Grundy Mine, but rather contends that its picketing was directed towards the mines in the Pocket, the facts appear to be clear that its picketing activities were not limited to persons employed in the Pocket Area. Rather it appears that they were directed also toward employees of Grundy. Its officers and members appear to have co-mingled with officers and members of Local 5881 in picketing activities both at the intersections of Pocket and Access Roads and at the intersection of Pocket Road with Highway 108. The evidence indicates that it was at all times acting in concert with Local 5881 and must therefore be held responsible for the picketing of Grundy. Dairymen's League Cooperation Association, 52 L.R.R.M. 1382; Grundy Mining Co., 130 N.L.R.B. 1181, enf'd National Labor Relations Board v. Local 5881, United Mine Workers, etc., 6 Cir., 296 F.2d 734.

The next area of disputed testimony is with reference to the purpose or object of the picketing that has occurred since December 26, 1962.

Section 8(b) (7) prohibits picketing by a union which is not the certified representative where an object of the picketing is recognition or organization under either of the three circumstances set forth in subparagraphs (A) (B) (C). Subparagraph (C) is the only pertinent subparagraph to this lawsuit. It prohibits the continuance of recognition or organization picketing without a certification petition being filed with the NLRB within a reasonable time of the commencing of the picketing, not to exceed 30 days.

The purpose of this legislation is well stated in the case of Charles A. Blinne d/b/a C. A. Blinne Construction Co., 135 N.L.R.B. 121, where the Board stated as follows:

"The intent of subparagraphs (A) and (B) is fairly clear. Congress concluded that where a union has been lawfully recognized and a question concerning representation cannot appropriately be raised, or where the employees within the preceding twelve months have made known their views concerning representation, both the employer and the employees are entitled to immunity from recognition or organization picketing for the prescribed period.

"Congress did not stop there, however. Deeply concerned over other abuses, more particularly 'blackmail' picketing, Congress concluded that it would be salutary to impose even further limitations on picketing for recognition or organization. Accordingly subparagraph (C) provides that even where such picketing is not barred by the provisions of (A) or (B) so that picketing for recognition or organization would otherwise be permissible, such picketing is limited to a reasonable period not to exceed 30 days unless a representation petition is filed prior to the expiration of that period. Absent the filing of such a timely petition, continuation of the picketing beyond a reasonable period becomes an unfair labor practice."

A review of the legislative history of Section 8(b) (7) indicates that the legis-

lation as originally passed by the Senate in Senate Bill 1555 limited its impact to situations where recognition was *"the object"* of the picketing. See 1 L.H. 583. The Bill as enacted, however, followed the pattern of Section 8(b) (4) and broadened the proscription to picketing which has "an object" of recognition or organization. See Denver Building & Construction Trades Council v. NLRB, 341 U.S. 675, 688, 689, 71 S.Ct. 943, 95 L.Ed. 1284.

The issue presented for the Court is therefore to determine whether, under all of the evidence, there is reasonable cause to believe that *an* object of the picketing was for the purpose of requiring Grundy to recognize the UMW.

██ It is contended by the UMW that the picketing that occurred upon December 26, 1962 and thereafter occurred over Grundy's refusal to deduct union dues, and grew out of an impasse in negotiations, and thus had as its object not recognition of the Union, but rather enforcement of the Union's economic demands or terms for a collective bargaining agreement. As insisted by the Union, picketing which is not for the purpose of enforcing recognition, but rather for the purpose of supporting economic or other collective bargaining demands of the Union, is not prohibited under Section 8(b) (7) (C).

It does appear from the evidence that the immediate cause of the picketing which began upon December 26, 1962 was a dispute over the check-off of union dues. However, Grundy's position with respect to the deduction of union dues is directly related to the problem of recognition. In declining to deduct and remit union dues except upon individual application and instruction of the employees, Grundy represented that it was attempting to protect itself upon the issue of recognition of the Union.

In support of its contention that the picketing grew out of an impasse in negotiations, it is the position of the UMW that the Sewanee Coal Operators Association, hereinafter referred to as "SCOA," was in fact and effect negotiating at all times for Grundy and that Grundy was merely using the certification requirement as a bargaining technique. In support of the Union's contention in this regard, the Union relies upon the evidence in the record to the effect that officials of Grundy served upon the Negotiating Committee of SCOA, that negotiating sessions were held by the SCOA and the UMW upon October 30, November 20 and December 18, and that at the last mentioned meeting a wage proposal was made by SCOA which included a wage proposal for mechanized mines, with Grundy's No. 11 Mine being the only mechanized mine operated by any member of the SCOA.

This wage proposal was later rejected by the Union and a counter-offer made of the National Bituminous Coal Wage Agreement.

██ Without attempting to pre-judge the merits of the Union's contentions in this regard, it should be pointed out that the responsibility imposed upon the Court under Section 10(*l*) is to determine whether there is any reasonable cause to believe that the respondents were engaging in picketing in violation of Section 8(b) (7) (C).

The evidence reveals that the SCOA was formed in the fall of 1962. Its membership was composed of some 20 or more operators in the Southeastern Tennessee coal fields. Its purpose was to conduct collective bargaining negotiations upon behalf of its members. Grundy was a member of SCOA and its officers did serve upon a Negotiating Committee, but there is credible evidence in the record that on each instance the Negotiating Committee met with the Union, the Union was advised that SCOA was not representing Grundy and that Grundy's officers were serving on the committee not as officials or representatives of Grundy, but as individuals representing other SCOA members.

It does not appear to be genuinely disputed but that Grundy advised the UMW both upon October 10 and again upon October 23, 1962 that it would insist upon certification of the UMW as a condition to any recognition of or bargaining with UMW. Likewise, it does not appear to be genuinely disputed that, although Grundy was a member of the SCOA and its officers served on the bargaining committee, at least at the initial bargaining session the UMW was specifically advised that SCOA was not bargaining on behalf of Grundy but rather on behalf of other members whose names were provided to the Union.

■ Under all of the evidence the Court can only conclude that there is reasonable cause to believe that an object of the picketing that occurred from and after December 26, 1962 was to require Grundy to recognize the Union.

Finally, the Court is faced with determining whether the picketing which began upon December 26, 1962 continued without a petition for certification being filed with the Board within a reasonable time, not to exceed 30 days.

■ The facts in this regard appear to be undisputed and are set out in the portion of this Opinion wherein the undisputed facts are stated. They include the fact that a previously filed petition for certification was pending at the time picketing began upon December 26, 1962. This petition was withdrawn without prejudice by the Union under date of January 29, 1963. A new petition was delivered to a representative of the NLRB upon February 21 and formally filed upon February 25. As to whether this complies with the requirement of filing for certification within a reasonable time, not to exceed 30 days, appears to be a question of statutory interpretation and therefore a question of law. While the pendency of a petition later withdrawn would certainly be a material factor for the Court to consider, if the issue was solely whether a reasonable

time had elapsed before the filing of a petition, it would not appear that the pendency of a petition later withdrawn would operate to toll the 30 Days limitation imposed by Congress in Section 8(b) (7) (C). When the legislation is considered in the light of its purpose, namely to settle wherever possible problems resulting from recognition and organization picketing by means of expedited elections, the Court can only conclude that a certification petition upon which an election can be ordered by the Board must be filed within the 30 day period and must remain filed until acted upon by the Board in order to permit the continuance of recognition picketing. The opinion of the Court in this respect appears to be supported by the decision of the Board in the case of Moore Laminating, Inc., 137 N.L.R.B. 88.

The Court therefore concludes that:

(1) It has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief;

(2) There is reasonable cause to believe that:

(a) The respondents, District 19, Local 7083, and Local 5881, are labor organizations within the meaning of Section 2(5), 8(b), and 10(l) of the Act.

(b) Grundy is engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

(c) Respondents have engaged in unfair labor practices within the meaning of Section 8(b) (7) (C) of the Act and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

■ To preserve the issues for orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved by the Board, a tem-

porary restraining order should issue enjoining and restraining the respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them from the commission, continuation, or repetition of their picketing of Grundy Mining Company or otherwise picketing or causing Grundy Mining Company to be picketed where an object thereof is to force or require Grundy Mining Company to recognize or bargain with respondents, or any of them, or any other labor organization, as the representative of employees of Grundy Mining Company, or to force or require employees of Grundy Mining Company to accept or select respondents, or any of them, or any other labor organization, as their collective bargaining representative, unless and until the respondents, or any of them, or such other labor organization, are certified as the representative of the employees pursuant to the provisions of Section 9 of the Act, or pending further orders of the Court in this cause.

The purpose of the restraining order herein granted is to permit the orderly but expeditious handling by the Board of the certification petition. Under the authority granted the Court in Section 10(*l*) to fashion a restraining order that would be just and proper, this Court will retain jurisdiction over the restraining order herein granted and control over the duration of the order. Should the Board not act within a reasonable time upon a certification petition, or should Grundy cause unreasonable delay in action being taken upon the petition, or should any good cause in law or equity arise as to why the injunction herein granted should be modified or dissolved, the respondents may at any time petition therefor.

This Opinion will constitute a findings of fact and conclusions of law in this case.

An order will enter accordingly.