Walter C. PHILLIPS, Regional Director of the Tenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED MINE WORKERS OF AMERICA, DISTRICT 19, United Mine Workers of America, Pocket Local 7083, and United Mine Workers of America, Palmer Local 5881, Respondents.

Civ. A. No. 4067.

United States District Court
E. D. Tennessee, S. D.
June 1, 1963.

Charles B. Slaughter, N. L. R. B., Atlanta, Ga., for plaintiff.

Willard P. Owens, Washington, D. C., for United Mine Workers and District 19.

E. H. Rayson, Knoxville, Tenn., for District 19, Local 7083 and Local 5881.

Judson Harwood, Nashville, Tenn., W. M. Ables, Jr., South Pittsburg, Tenn., for intervenor.

FRANK W. WILSON, District Judge.

The Regional Director of the National Labor Relations Board filed a petition in this court upon March 12, 1963 alleging that there was good cause to believe

that the respondent unions had committed an unfair labor practice in violation of Sec. 8(b) (7) (C) of the National Labor Relations Act (29 U.S.C.A. § 158 (b) (7) (C)) by engaging in organizational picketing of Grundy Mining Company for more than 30 days without having filed a petition for an election. A temporary injunction was sought restraining all picketing pending NLRB action upon the charge. After a hearing this Court granted a temporary injunction. D.C., 217 F.Supp. 552.

A consent order approved by both the petitioner, the NLRB, and the respondent unions has now been tendered in which it is proposed to dissolve the temporary restraining order. An affidavit has also been filed by the NLRB in which the Court is advised that an unfair labor practice charge has now been filed by the United Mine Workers of America against Tennessee Consolidated Coal Company, the parent corporation to Grundy Mining Company, charging the employer with violation of Sec. 8(a) (1) (2). It is further stated in the affidavit that upon investigation of the charge reasonable cause for issuing a complaint thereon appeared to exist, and that such a complaint would have issued had not an informal settlement agreement been signed by the employers, Tennessee Consolidated Coal Company and Grundy Mining Company. Upon this state of the record it is contended by the NLRB that dissolution of the injunction heretofore issued is required by the provision of Sec. 10(l) of the Act which forbids the Board from applying for a temporary injunction against picketing under a Sec. 8(b) (7) (C) charge, where the employer is himself charged with a Sec. 8(a) (2) unfair labor practice charge which is reasonably believed to be true and upon which the Board concludes a complaint should issue.

Simultaneously with the filing of the proposed consent order seeking to dissolve the injunction, a petition was filed by Grundy Mining Company seeking to intervene, opposing the dissolution of the injunction, and requesting permission to bring actions of contempt for alleged violation of the injunction. A hearing was held upon the petition to intervene and upon all matters here in dispute and briefs have now been filed.

Grundy seeks to support its right to intervene principally by reliance upon the language in Sec. 10(l), wherein it is provided that upon the filing of a petition by the NLRB seeking a temporary injunction upon an 8(b) (7) (C) charge:

> "[T]he courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present relevant testimony."

Both legal precedent and reason would appear to require denial of the right to intervene here sought.

Reason would appear to require the denial of any right in the charging party to intervene and become a party to the suit. Otherwise, the Congressional purpose clearly apparent in the National Labor Relations Act to place in the National Labor Relations Board control over the application for injunctions in unfair labor practice cases such as is here involved would be defeated. The Congressional purpose as set forth in the Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.) of forbidding the issuance of injunctions in labor disputes upon the application of private litigants would be circumvented if private litigants could by the act of intervening take over, control and conduct litigation initiated by the NLRB. Amazon Cotton Mill Co. v. Textile Workers Union of America, (C.A.4) 167 F.2d 183. Actions for injunctions brought under Sec. 10(l) are clearly special statutory actions brought in the public interest and not actions for vindication merely of private rights. The power to initiate such actions is clearly vested in the public authority charged with the administration of the Act, namely the National Labor Relations Board. The Court cannot read into the

statutory language of Sec. 10(*l*), when it permits a charging party to appear by counsel and present relevant testimony, the right of a charging party to do anything more than just that. To read into this language any right in the charging party to intervene and become a named party to the suit, with all of the rights of a named party in the suit, would do violence to the federal statutory system in the Labor-Management field and would remove from the National Labor Relations Board the right and authority to control and direct the Government's interests in litigation which it initiates.

Legal precedent would appear to support the conclusion above stated and likewise require the denial of any right of the charging party to intervene and become a party to the suit. In the case of Aluminum Ore Co. v. N.L.R.B. (C.A.7) 131 F.2d 485, 147 A.L.R. 1, in an analogous proceeding, the Court stated:

> "The union has asked leave to intervene. This proceeding is in the public interest, prosecuted by an authorized agency of the Government, in furtherance of an express policy and intent upon the part of Congress to establish, in behalf of the national public, a standard of conduct presumably productive of progress in protection of the public welfare. In such proceedings, private parties have no rightful place except as the court may desire to avail itself of helpful suggestions."

See also N.L.R.B. v. Retail Clerks International Association et al. (C.A.9) 243 F.2d 777, 783; N.L.R.B. v. Florida Citrus Canners Corp., (C.A. 5) 288 F.2d 630, 639–640; Haleston Drug Stores, Inc. v. N.L.R.B., (C.A. 9) 190 F.2d 1022.

■ Grundy Mining Company further seeks to predicate its right to be heard upon Sec. 10 of the Administrative Procedure Act (5 U.S.C.A. § 1009), relating to judicial review of agency action. Agency advocacy in a judicial proceeding is obviously not such agency action as would be subject to judicial review under the Administrative Procedure Act or permit intervention. Judicial review of administrative action under the Administrative Procedure Act is limited to orders of definite character dealing with the merits of proceedings before an administrative agency. United Gas Pipe Line Co. v. Federal Power Commission, (C.A. 3) 206 F.2d 842.

The denial of the right to intervene does not however mean that the charging party is wholly without right to be heard or that the Court will ipso facto disregard any and all legal contentions advanced by the charging party in this type of proceeding. The NLRB has interpreted the proviso in Sec. 10(*l*), wherein the Board is denied the right to apply for an injunction on a Sec. 8(b)(7)(C) charge if a meritorious unfair labor practice charge is pending against the employer under Sec. 8(a)(2), as requiring that the Board seek dissolution of any injunction once obtained upon a charge that appears meritorious being made against the employer at any time during the existence of the injunction.

The employer contends that this is a misinterpretation of the law, that once granted the Court has general equitable jurisdiction to continue the injunction, that in accordance with the strict language of Sec. 10(*l*) the NLRB is prevented from applying for an injunction against picketing but not entitled or required to seek dissolution of an injunction once granted, upon an unfair labor practice charge against the employer being made, and, finally, that upon termination of the unfair labor practice charge against the employer by informal settlement prior to the issuance of the complaint, the charge against the employer forms no basis for seeking dissolution of the injunction against picketing.

■ The granting of an injunction under Sec. 10(*l*) is purely a statutory procedure and general equitable jurisdiction is granted to the Court only to the extent expressly provided or necessarily implied by the statute. There is no inherent equitable jurisdiction in a

federal court to either grant or continue an injunction against picketing in the absence of statutory authority. This injunction is not based upon violence or threatened violence. It does not arise from general equitable considerations. It arose strictly in accordance with the jurisdiction vested in the Court by Sec. 10(*l*) to grant injunctions to restrain picketing that constitutes an unfair labor practice under Sec. 8(b) (7) (C).

■ Turning next to the contention that the proviso in Sec. 10(*l*) against seeking an injunction constitutes no mandate on the Board to request dissolution of an injunction previously granted, while it does appear that the strict language of the proviso refers to a charge against the employer that "has been filed"—i. e., filed before application by the NLRB for the injunction against picketing, the language of the proviso should be interpreted with the Congressional purpose in mind. It is apparent that the object of the proviso in Sec. 10(*l*) was to prevent the issuance of a temporary restraining order against picketing by the Union when an unfair labor practice appears to have been committed by the employer that would prevent a fair election. To strictly interpret the language of the proviso as referring only to the situation in which the charge against the employer was pending at the time of application for an injunction against the Union would reward the employer who committed an unfair labor practice but managed to conceal it until after the injunction was obtained against the Union or otherwise would permit or encourage the employer to engage in unfair labor practice after issuance of the injunction against the Union without fear of any adverse effect upon the injunction. Such an interpretation of Sec. 10(*l*) would obviously defeat the Congressional intent behind the proviso. The Court must therefore interpret the proviso in Sec. 10(*l*) as denying authority to the NLRB from either seeking a temporary injunction or maintaining an injunction once granted against a Union from picketing for a Sec.

8(b) (7) unfair labor practice charge, where a meritorious unfair labor practice charge under Sec. 8(a) (2) appears to exist against the employer for dominating or assisting another union, regardless of whether the charge against the employer arose before or after the granting of the injunction against the Union.

■ Finally, the Court must consider the contention that upon termination of the unfair labor practice charge against the employer by informal settlement prior to the issuance of a complaint, the charge against the employer forms no basis for seeking dissolution of the injunction against picketing. The Court has considerable difficulty in seeing where, under the proviso in Sec. 10(*l*), a charge against the employer that has been settled by informal agreement, or otherwise terminated prior to issuance of a complaint, would constitute a basis for either prohibiting the NLRB from seeking an injunction against picketing or requiring the Board to seek dissolution of an injunction once granted. It is not believed to be necessary or appropriate, however, to decide this issue. The NLRB is the only proper party complainant in this proceeding. The NLRB is charged by Congress with the responsibility for effecting the national labor policy as sat forth in the National Labor Relations Act. The Court does not feel it proper to continue an injunction where the applicant does not want it continued and has stated that it does not expect to seek further enforcement of the order. The continuance of an injunction under such circumstances would be meaningless.

■ It is apparent by analogy from what has been said with reference to the employer not having a right to intervene in this case, that the employer would likewise have no standing before the Court to seek enforcement of the order or to present citations for contempt, other than through the NLRB. As expressly held by the United States Supreme Court in the case of Amalgamated Util-

**108**

ity Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738:

"If the decree of enforcement is disobeyed, the unfair labor practice is still not prevented. The Board (NLRB) still remains as the sole authority to secure that prevention."

The Court therefore concludes that the injunction heretofore granted in this cause should be dissolved upon the request of the NLRB. The consent order to this effect will be executed and entered by the Court simultaneously with the filing of this Opinion.