MT. ADAMS VENEER CO.; Publishers Forest Products Co. of Washington; and Puget Sound Plywood, Inc., Plaintiffs–Appellants,

v.

UNITED STATES of America; Richard E. Lyng; F. Dale Robertson; and James F. Torrence, Esq., Defendants–Appellees.

No. 87–4442.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 29, 1989.

Memorandum Nov. 15, 1989.

Order and Opinion Feb. 13, 1990.

James H. Clarke, Spears, Lubersky, Bledsoe, Anderson, Young and Hilliard, Portland, Or., for plaintiffs-appellants.

William B. Lazarus, U.S. Dept. of Justice, Land and Natural Resources Div.,

Washington, D.C., for defendants-appellees.

Before FERGUSON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

## FACTS

Appellant, Mt. Adams Veneer Company (Mt. Adams), is a joint venture partnership organized under the laws of the State of Washington. It is owned, in equal 50 percent shares, by the other two appellants, Publishers Forest Products Company of Washington (Publishers) and Puget Sound Plywood, Inc. (Puget Sound), both Washington corporations. Each of the three appellants submitted applications to the Forest Service for contract buy-out under the Federal Timber Contract Payment Modification Act, 16 U.S.C. § 618 et seq. (the Act). Publishers sought the buy-out of timber sales contracts which it held and under which it was committed to purchase 182,073 MBF (thousand board feet) of timber. Puget Sound sought the buy-out of timber sales contracts which it held and under which it was committed to purchase 36,745 MBF of timber. Both of these applications were approved.

Mt. Adams sought the buy-out of timber sales contracts which it held and under which it was committed to purchase 55,000 MBF of timber.[1] Mt. Adams' application was denied by the Regional Forester on the grounds that it was an affiliate of Publishers and Puget Sound, and that Publishers and Puget Sound had each fully utilized its statutory buy-out entitlements.

In its decision dated July 21, 1986, the Chief of Forest Service affirmed the decision of the Regional Forester and this became the final decision of the Secretary. On February 3, 1987, Mt. Adams, Publishers, and Puget Sound filed an action in the district court alleging that the Secretary's denial of Mt. Adams' buy-out application was not in accord with the Act. The district court, ruling on cross-motions for summary judgment, granted the Secretary's motion for summary judgment and Mt. Adams, Puget Sound and Publishers appeal.

The Regional Forester rejected Mt. Adams's buy-out application because "Puget Sound Plywood and Publishers Forest Products Co. are affiliates of the joint venture [Mt. Adams] ... The volume entitlement of the joint venture is the total of all affiliates, in this case 200 million board feet. Publishers has applied to buy out 199,858 MBF and Puget Sound 36,745 MBF, totaling 235,603 MBF. This leaves [Mt. Adams] with no remaining entitlement volume." Mt. Adams appealed the Regional Forester's decision to reject its buy-out application to the Chief Forester. The Chief Forester granted Mt. Adams an oral presentation which was conducted on May 8, 1986. Relying on 13 C.F.R. § 121.3(a)(vii)(A),[2] the Chief Forester concluded that Mt. Adams does not meet the definition of a joint venture because it "has been in operation for at least 11 years and conducts business generally." In accordance with the SBA affiliation regulation, 13 C.F.R. § 121.3(a)(i),[3] the Chief Forester also

---

1. In 1978, Mt. Adams entered into a contract with the United States, designated the Siler 6 Contract, No. 06766–1, for the purchase of 19,500 MBF of timber. In 1979, Mt. Adams entered into a contract with the United States, designated the Lynx Contract, No. 06785–1, for the purchase of 37,500 MBF of standing timber from federal lands.

2. 13 CFR § 121.3(a)(vii)(A) provides in part:
   A joint venture for size determination purposes is an association of persons and/or concerns with interests in any degree or proportion by way of contract, express or implied, consorting to engage in and carry out a single specific business venture for joint profit for which purpose they combine their efforts, property, money, skill, or knowledge, but not on a continuing or permanent basis for conducting business generally. A joint venture is viewed as a business entity in determining power to control its management.

3. 13 CFR § 121.3(a)(i) provides:
   Every business concern is considered as having one or more parties who directly or indirectly control or have the power to control it. Control may be affirmative or negative and it is immaterial whether it is exercised so long as the power to control exists.

concluded that Mt. Adams is an affiliate of Publishers and Puget Sound. According to the Chief Forester, "Publishers and Puget Sound are each a 50 percent partner in Mt. Adams and make decisions by consensus." The Chief Forester concluded that "on the basis of the negative power to control a 50 percent owner (whereby one 50 percent owner can block actions of the other 50 percent owner), Mt. Adams is an affiliate of Publishers and an affiliate of Puget." In affirming the Regional Forester, the Chief Forester ruled that the volume entitlement for buy-out purposes under the Act for Mt. Adams is the total of the concern and its affiliates—292,403 MBF.

The district court, adopting the Secretary's legal reasoning, concluded that Publishers and Puget Sound were affiliates of Mt. Adams by reason of their independent negative control over the management of Mt. Adams and granted the Secretary's motion for summary judgment. The district court refused to issue an injunction mandating the Forest Service to reopen and redetermine Puget Sound's and Publishers' buy-out entitlements. Instead, the district court held that reopening the previously approved buy-out applications of Puget Sound and Publishers "presents substantial questions of policy and procedure which the Forest Service is better equipped to handle than this court." Publishers and Puget Sound "should therefore apply to the Forest Service for a redetermination of their buy out eligibilities."

## DISCUSSION

### I

■ The grant or denial of a summary judgment is a question of law reviewable de novo. *Cook Inlet Native Ass'n v. Bowen,* 810 F.2d 1471, 1473 (9th Cir.1987). This court accords substantial deference to an agency's interpretation of a statute it is charged with administering. *National Resources Defense Council v. Hodel,* 819 F.2d 927, 929 (9th Cir.1987).

The Act provides that

the Secretary of Agriculture [is] authorized and directed to permit a requesting purchaser to return to the government a volume of the purchaser's timber contracts as determined under paragraph (2) upon payment of a buy out charge from such purchaser in an amount as determined under paragraph (3). The purchaser shall be released from further obligation to cut, remove, and pay for timber under such contract upon payment ... of such buy out charge.

16 U.S.C. § 618(a)(1) (1985).

Paragraph 2(B) of the Act, which pertains to the volume of timber contracts which may be bought out under the Act by a single purchaser, provides that

[a] purchaser holding more than twenty-seven million three hundred thousand board feet of net merchantable saw timber as of January 1, 1982, in qualifying contracts ... shall be entitled to buy out up to 55 percentum of such timber volume up to a maximum of two hundred million board feet.

16 U.S.C. § 618(a)(2)(B).

The Act defines a purchaser as "the holder of a contract to purchase timber from the Secretary of Agriculture." *Id.* § 618(a)(7)(C). The Act further provides that "[f]or purposes only of determining a purchaser's buy-out limitations ... concerns which are affiliates ... shall be treated as a single entity." *Id.* § 618(a)(7)(A).

Concerns are affiliates of each other when either directly or indirectly, one concern controls or has the power to control the other, or a third party or parties controls or has the power to control both. In determining whether or not affiliation exists, consideration shall be given to all appropriate factors, includ-

Example. A party owning 50 percent of the voting stock of a concern would have negative power to control such concern since he can block any action of the other stockholders. Also, the bylaws of a corporation may permit a stockholder with less than 50 percent of the voting stock to block any actions taken by the other stockholders. Affiliation exists when one or more parties have the power to control a concern while at the same time another party or other parties, may be in control of the concern at the will of the party with the power to control.

ing, but not limited to, common ownership, control management, and contractual relationships.

16 U.S.C. § 618(a)(7)(B).

The parties differ in their interpretation of the word "control" within the definition of affiliate. The Secretary maintains that since Mt. Adams is owned in equal shares by Publishers and Puget Sound, Mt. Adams is controlled by both entities. The Secretary relies on the Senate Report which states that the definition of the term "affiliates" was adopted from the definition used by the Small Business Administration (SBA) and indicates the SBA regulations should be used as a guide in determining affiliation. S.Rep. No. 98–596, 98th Cong., 2d Sess. 12, reprinted in 1984 U.S.Code Cong. & Admin.News 3796, 3805.

The SBA definition of affiliation is "[e]very business concern is considered as having one or more parties who directly or indirectly control or have the power to control it. Control may be affirmative *or negative* and it is immaterial whether it is exercised so long as the power to control exists." 13 C.F.R. § 121.3(a)(i) (1987) (emphasis added). Using the guidelines set forth in the SBA regulations, the Secretary concluded that Publishers and Puget Sound are affiliates of Mt. Adams by reason of their independent negative control over the management of Mt. Adams.

The appellants contend that the Secretary improperly applied the concept of negative control in reaching its conclusion that Puget Sound and Publishers are affiliates of Mt. Adams. According to the appellants, it is impossible for either of two equal owners to control Mt. Adams as neither owner can conduct the business of the joint venture without the other's consent. The appellants contend that reliance on the SBA rule of negative control is misplaced because it is contrary to the plain meaning of the term as used in the statute and because the Senate Report is not a reliable indicator of congressional intent. Finally, the appellants contend that even if the SBA rule is applicable here, the Secretary has erred in applying the rule to a partnership. We reject these arguments.

■ "Where review involves an agency's construction of the statute it administers, the court must first give effect to the unambiguously expressed intent of Congress. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694] (1984). If the statute is silent or ambiguous with respect to the specific issue, then the court is limited to considering whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 843 [104 S.Ct. at 2781]." *Sierra Pacific Industries v. Lyng*, 866 F.2d 1099, 1105 (9th Cir.1989).

■ According to the Act, "concerns are affiliates of each other when either directly or indirectly, one concern controls or has the power to control the other." 16 U.S.C. § 618(a)(7)(A). The term "control" is susceptible to more than one meaning; therefore, the face of the Act is ambiguous and we should defer to the Secretary's interpretation of the Act if it is based on a permissible construction of the statute. Based on the Senate Reports, we believe the Secretary's interpretation is permissible.

Finally, contrary to appellant's contention the SBA regulation is applicable to all business entities, including partnerships. *See* 13 C.F.R. §§ 121.3(a)(i) and 121.3(b). Accordingly, the district court correctly affirmed the Secretary's interpretation of the term affiliate as including the concept of negative control.

## II

The Secretary determined the buy-out eligibility of Mt. Adams by considering all three entities:

| | |
|---|---|
| Publishers | 199,858 MBF |
| Puget Sound | 36,745 MBF |
| Mt. Adams | 55,800 MBF |
| | 292,403 MBF |

Since the statutory limit of 200,000 MBF was exceeded, the Secretary denied the application of Mt. Adams for a contract buy-out. *See* 16 U.S.C. § 618(a)(2)(D). The Secretary concedes that each entity created by the affiliation decision—Publishers/Mt. Adams and Puget Sound/Mt. Adams—is

entitled to include Mt. Adams' contracts in its buy-out entitlement. This would result in additional buy-out relief for the entity and/or permit the entity to choose to have the most economically advantageous contracts bought out (that is, the higher priced contracts). Puget Sound's and Publishers' buy-out applications, however, have already been approved and processed. All the contracts returned by Puget Sound and Publishers have been closed; each company has signed contract closure agreements waiving their claims against the government, and the government has released each company from all obligations under their respective contracts. 36 C.F.R. § 223.178. The Forest Service has resold the timber from several of the returned contracts. Nonetheless, Puget Sound and Publishers seek equitable relief that would compel the Forest Service to permit them to amend their buy-out applications to include Mt. Adams' contracts in their buy-out program.

■ Where, as here, injunctive relief and a declaratory judgment are sought with regard to an administrative determination, the "courts traditionally have been reluctant" to grant such relief unless there is a "controversy 'ripe' for judicial resolution." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (*Abbott*) (the "basic rationale" for the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties"). Under the ripeness doctrine, an agency must have taken "final" action before judicial review is appropriate. 5 U.S.C. § 704; *Friedman Bros. Inv. Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir.1982) (*Friedman*).

"It is the imposition of an obligation or the fixing of a legal relationship that is the indicium of finality of the administrative process." *Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir.1979). Indicia of finality include: the administrative action challenged should be a definitive statement of an agency's position; the action should have a direct and immediate effect on the day-to-day business of the complaining parties; the action should have the status of law; immediate compliance with the terms should be expected; and the question should be a legal one. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980) (*Standard Oil*) (citations omitted).

In this case, the Secretary only concluded that "the volume entitlement of Mt. Adams and its affiliates has been applied for and granted by the Regional Forester." The Secretary never addressed the question of whether Puget Sound and Publishers were prohibited from amending their previously approved buy-out applications. In fact, Puget Sound and Publishers were not parties to Mt. Adams' administrative appeal.

Based on the Secretary's position in this appeal, Puget Sound and Publishers contend that the Forest Service will not permit them to amend their applications.[4] "Agency advocacy in a judicial proceeding is obviously not such agency action as would be subject to judicial review under the Administrative Procedure Act.... Judicial review of administrative action under the Administrative Procedure Act is limited to orders of definitive character dealing with the merits of proceedings before an administrative agency." *Phillips for and on Behalf of N.L.R.B. v. United Workers of America, Dist. 19*, 218 F.Supp. 103, 107 (D.C.Tenn.1963). Until the Forest Service acts, the agency's action is speculative at best.

■ Since the agency has not acted and there is no effect on the day-to-day business of the appellants, there is no final

---

**4.** According to the Secretary, Puget Sound and Publishers could have joined the administrative appeal by Mt. Adams of the Regional Forester's rejection of its application, and sought a stay of further action with respect to their own buy-out applications pending final judicial determination of the Regional Forester's decision on Mt. Adams' application. Since the appellants failed to do this, the Secretary contends that any further administrative review is foreclosed.

agency action subject to judicial review. 5 U.S.C. § 704. Accordingly, a challenge to the agency's possible decision to prohibit amendments to previously approved buy-out applications is premature, and as such, is not ripe for judicial review. *See Standard Oil*, 449 U.S. at 239–45, 101 S.Ct. at 493–95.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from Part II of the majority's disposition which affirms the district court's denial of injunctive relief to Puget Sound Plywood, Inc. ("Puget Sound") and Publishers Forest Products Company of Washington ("Publishers"). Puget Sound and Publishers sought injunctive relief to compel the Forest Service to permit them to amend their buy-out applications in order to include certain Mt. Adams Veneer Company's ("Mt. Adams") contracts in their respective applications.

The majority properly determines that Puget Sound and Mt. Adams are affiliates and that Publishers and Mt. Adams are affiliates. But somehow it fails to recognize the necessary implication of these conclusions: as affiliates of Mt. Adams, Puget Sound and Publishers are each entitled to include portions of Mt. Adams' contracts in their separate buy-out applications. Instead, the majority insists that Puget Sound and Publishers be relegated back to the Forest Service to start a new, and in my view needless, process seeking leave to amend their original filings. Even footnote 4 of the majority's disposition acknowledges that such process is likely to be a useless act, and counsel for the Forest Service said as much during oral argument. The majority simply prescribes an exercise in futility. The majority improperly and illogically divorces the findings on the merits from the determination of whether Puget Sound and Publishers may amend their applications in light of such findings. The Federal Timber Contract Payment Modification Act clearly provides that, for the purpose of determining a purchaser's buy-out limitation, affiliates "shall be treated as a single entity." 16 U.S.C. § 618(a)(7)(A). Obviously this means that an entity consisting of two affiliates is allowed only one buy-out entitlement rather than two and that such an entity may elect to buy out the most economically advantageous contracts held by either affiliate. Puget Sound/Mt. Adams and Publishers/Mt. Adams must therefore be treated as single entities; having been deemed affiliates of Mt. Adams, Puget Sound and Publishers are each necessarily entitled to include selected Mt. Adams' contracts in their buy-out applications.

The district court has the power to order equitable relief. *See Sierra Pacific v. Lyng*, 866 F.2d 1099, 1112 (9th Cir.1989) ("We find nothing in the statute to indicate that Congress intended to divest the [district] courts of their inherent equitable powers"). I believe the district court improperly failed to exercise its equitable powers by not requiring the Forest Service to permit Puget Sound and Publishers to amend their buy-out applications as a consequence of its ruling on the merits.

I would therefore remand to district court with instructions to grant such equitable relief.