**POLICE AUTOMATIC WEAPONS SERVICES, INC., an Oregon corporation, Plaintiff,**

v.

**The Honorable Lloyd BENSON [sic], Secretary of the Treasury, et al., Defendants.**

**Civ. No. 93–577–MA.**

United States District Court, D. Oregon.

Nov. 5, 1993.

Kenneth L. Schmit, Thetford & Schmit, Lake Oswego, OR, for plaintiff.

Kenneth C. Bauman, Asst. U.S. Atty., Portland, OR, for defendants.

## OPINION

MARSH, District Judge.

Plaintiff filed this action against the Secretary of the Treasury and the Director of the Bureau of Alcohol, Tobacco and Firearms (ATF) seeking declaratory relief regarding machine gun parts manufactured prior to the effective date of the 1986 amendments to the Gun Control Act (GCA), 18 U.S.C. § 922. Plaintiff asserts two alternative claims under the Administrative Procedure Act (APA), contending that the ATF acted arbitrarily and capriciously: (1) in failing to register 1,248 machine gun receivers; or (2) in failing to register 610 of those receivers along with other parts as a sufficient "combination of parts" to qualify within the definition of a machine gun under the GCA.

Defendants now move to dismiss this action or for summary judgment on grounds that plaintiff's first claim is barred by the statute of limitations and that plaintiff's second claim fails as a matter of law. In support of their motion, defendants filed a copy of the entire administrative record. For the reasons which follow, defendants' motions are granted.

## BACKGROUND

Plaintiff is an Oregon corporation which holds a valid Class II license, issued by the ATF, under which it is permitted to manufacture firearms.

In 1986, Congress amended the GCA, 18 U.S.C. §§ 921–929, which thereafter made unlawful the possession or transfer of any machine gun to any person, subject to two limited exceptions: (A) transfers to government agencies; and (B) "any lawful transfer or possession of a machine gun that was lawfully possessed before the date this subsection takes effect." § 922(o). The effective date of the GCA amendments was May 19, 1986.

Section 922 defines "machine gun," by reference to the National Firearms Act (NFA), 26 U.S.C. § 5801–5872, which in turn defines "machinegun" as follows:

" '[M]achinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot without manual reloading ... The term shall include the frame or receiver of any such weapon ... and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

26 U.S.C. § 5845(b).

Stephen Higgins, Director of the ATF, explains in his letter to Congressman Denny Smith (Admin. Record, Ex. 23), after passing both Houses, the bill was on the President's desk for 30 days, during which time, machine gun manufacturers across the country worked overtime to produce and register as

many machine guns as possible prior to the amendment's effective date:

"Small manufacturers who had registered only a handful of machineguns in prior years suddenly reported the manufacture of thousands of machineguns. Because of this and also as a result of complaints from the firearms industry, we asked our Inspectors to conduct inspections of manufacturers to determine if the firearms had actually been manufactured. We found that approximately 50% of the machine guns had not been manufactured, and they were not accepted for registration."

Plaintiff was one of the many manufacturers attempting to increase production during the brief delay between passage and official enactment of the amendment. Admin.Rec.Ex. 2. As plaintiff's president, Robert J. Imel, explained in one of his first letters to the ATF Technical Services Division:

"[News] of this bill created a devastating effect at our company because it meant that 10 years of hard work every day would be wasted ... Our only choice to try and have at least some additional inventory in stock was to get the steel tubing cut into the correct length for a receiver, immediately stamp a serial number on the receiver tubing ... so the tubes were completed to the point of registration."

On April 16, April 19 and May 5, 1986 plaintiff submitted ATF Forms 2, Notice of Firearms Manufactured or Imported, for 1,248 firearms, specifically 9mm and .45 submachine guns and silenced submachine guns.[1]

ATF Inspector Lee Rutherford conducted a complete inventory of all items designated by plaintiff as manufactured machine guns on May 30, 1986 and sent notice to his area supervisor that he "could not determine if the items met the minimum standards for classification as NFA weapons." Admin.Rec., Ex. 6. Immediately following Rutherford's inspection, plaintiff agreed to and did submit samples of the items to the ATF which were received at the Firearms Technology Branch of ATF on June 6, 1986.

On July 1, 1986, Edward Owen, Chief of the ATF Firearms Technology Branch, wrote to plaintiff indicating that his office had examined the samples and determined that several of the submissions had "reached a point in manufacture where they are considered to be machinegun receivers," but that the 1,248 tubes bearing serial number 0369 had not reached the manufacturing stage where they could be considered receivers for machine guns, nor were they considered "firearms" as defined in § 921(a)(3).[2]

The next correspondence in the administrative record is plaintiff's counsel's first letter to Owen seeking "reconsideration" of the position set forth in the July 1, 1986 letter. According to plaintiff, the 1,248 tubes were "completed to the point of registration" in the same manner as the company had done with receivers for the past five years.[3] This letter was followed by several additional requests for reconsideration which were rejected in a letter from Owen dated November 24, 1986. Admin.Rec., Ex. 11. Several more requests for reconsideration followed from the plaintiff and Congressman Denny Smith, see Admin.Rec., Ex. 12 and 13, and were rejected by Owen on November 20, 1987. Admin.Rec., Ex. 16.[4]

---

1. Registration of firearms is required by the NFA, 26 U.S.C. 5841. Subsection (c) of 5841 provides that every firearm manufacturer "shall notify the Secretary of the manufacture of a firearm in such manner as may by regulations be prescribed and such notification shall effect the registration of the firearm required by this section."

2. Section 921(a)(3) defines "firearms" as "(A) any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon."

3. A firearms manufacturer is required to place a serial number on the firearm prior to or immediately upon completion of the firearm or face potential criminal prosecution. 26 U.S.C. § 5842; see e.g. United States v. Walsh, 791 F.2d 811 (10th Cir.1986) (firearms manufacturer who engraved serial number one day following manufacture in violation).

4. Owen's November 20, 1987 letter denying plaintiff's second series of requests for reconsideration is noteworthy in that it contains the first written suggestion of the possibility that the 1,248 tubes, "if" combined with sufficient parts, and instructions such that a machine gun could be constructed, "could be considered a combina-

On April 19, 1988, plaintiff argued for the first reported time to the ATF that, although it maintained that the 1,248 tubes constituted machine gun receivers, it also took the position that it had in its possession prior to May 19, 1986, the effective date for the GCA amendments, 610 "combination of parts" sufficient to construct 610 machine guns.[5] Plaintiff further argued that the Form 2 Notices it filed prior to May 19, 1986 should be accepted by NFA so that the machine guns could be assembled and "placed for sale to the general public." Admin.Rec., Ex. 42, p. 2.

Owen responded that plaintiff could manufacture machine gun receivers from the combination of parts plaintiff identified as having been in its possession prior to May 19, 1986. However, Owen advised plaintiff that any machine gun receiver "manufactured subsequent to May 19, 1986" would be subject to the restrictions of § 922(*o*) and hence, could only be transferred to a governmental or law enforcement agency. Admin.Rec., Ex. 19. Plaintiff's request that the ATF consider 610 combinations of parts to be registered based upon plaintiff's attempted registration of the 1,248 tube-receivers was expressly rejected by Wayne Moran, Chief of the ATF National Firearms Act Branch in a letter dated May 22, 1989. Admin.Rec., Ex. 41. Moran explained that he agreed with plaintiff that the unfinished receiver and identified parts constituted a sufficient "combination of parts" to meet the definition of a machine gun (under § 5845), but that the "combination" had not been properly registered prior to May 19, 1986: "the registration documents when filed identified the firearms as complete machine guns. We found this not to be accurate as further illustrated by your request."

## DISCUSSION

### 1. *Statute of Limitations as Applied to Claim 1*

The APA provides the procedural mechanism for judicial review of most challenged agency actions. 5 U.S.C. § 702. Neither the GCA, APA nor the NFA contain a specific statute of limitations, thus the general civil action statute of limitations, 28 U.S.C. § 2401(a), applies. *See, e.g. Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir.1990). Section 2401(a) provides that every civil action against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues."

There is no dispute that the six-year limitations period applies to this action. The dispute centers upon when the ATF's determination regarding plaintiff's attempted registration was "final" for purposes of triggering the statute. Defendants contend that the limitations period was triggered on July 1, 1986 when Owen sent plaintiff the letter advising it that the 1,248 tubes were not considered machine guns under the CGA. In its opposition memoranda, plaintiff contends that the limitations period was not triggered until July 6, 1988 [6] or January 19, 1989 when Stephen Higgins, the Director of the ATF advised Representative Denny Smith of ATF's position regarding plaintiff's claim. In his affidavit, plaintiff's President Robert J. Imel contends that he has never received actual notice from the Director of the ATF rejecting plaintiff's request to register the 1,248 tubes. Thus, it is plaintiff's contention that the applicable statute of limitations should not begin to run until the ATF Director, Stephen Higgins, took a position on plaintiff's registration.

tion of parts from which a machinegun [could] be assembled."

**5.** Defendants assert that plaintiff first raised the "combination of parts" claim on April 1, 1987 and cite exhibits 41 and 44 of the administrative record—both of which are letters from the ATF to plaintiff. Exhibit 41 references the August 10, 1988 letter from plaintiff. Exhibit 44 indicates that the combination issue was first raised by

plaintiff on April 1, 1987, but I find no correspondence or records from that date.

**6.** The July 6, 1988 date is referenced only once on page 2 of plaintiff's memo in opposition and I have been unable to find any document so dated. There is a July 5, 1988 letter from Higgins to Denny Smith addressing the general situation the ATF faced following the 1986 GCA amendments and discussing an issue relative to AK 47 conversion kits. Admin.Rec., Ex. 23.

■ A right of action first accrues under § 2401(a) when an administrative action is "final." *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 1187, 18 L.Ed.2d 256 (1967). Under the APA, 5 U.S.C. § 704, judicial review is available upon "final agency action" and finality is not affected by a request for reconsideration absent express rules to the contrary. When the claim is against the United States, principles of sovereign immunity require that the waiver of liability be strictly limited to the terms of the statute. *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979).

Most disputes regarding "finality" involve questions of ripeness or exhaustion. *See e.g., Municipality of Anchorage v. United States,* 980 F.2d 1320, 1323 (9th Cir.1992) (ripeness of EPA policy in light of presidential expression of intent to review and modify); and *Mt. Adams Veneer Co. v. United States,* 896 F.2d 339, 343 (9th Cir.1990) (ripeness); and *Sierra Club v. Penfold,* 857 F.2d 1307, 1319 (9th Cir.1988) (exhaustion). The underlying rationale to the ripeness and finality doctrines is similar—they are designed to prevent courts from engaging in abstract disagreements and to protect agencies from premature judicial interference. *See, Mt. Adams,* 896 F.2d at 343. The parties agree that there is no exhaustion requirement for judicial review of an ATF decision.

■ In determining whether an administrative statement is "final," courts have identified certain "indicia of finality," which include whether: (1) the administrative action is a "definitive statement" of the agency's position; (2) the action has a direct or immediate effect on plaintiff's day-to-day business; (3) the action has the "status of law"; and (4) the question is a legal one. *Mt. Adams,* 896 F.2d at 343.

■ Plaintiff does not cite, nor have I been able to find, any authority for its proposition that an agency action is not "final" until the Director of the agency takes a position on the subject at issue. According

to the ATF's "Mission statement" the Firearms Technology Branch is the division of the ATF responsible for testing and evaluating firearms for "classification under" the CGA. The July 1, 1986 letter from the Chief of the Firearms Technology Branch division is a clear, unequivocal, "definitive" denial of plaintiff's attempt to register the 1,248 tubes. Plaintiff admits that the action had a direct and immediate effect on its day-to-day business operations and that immediate compliance was expected and received. Further, the question raised from the action is a legal one under the terms of the CGA and NFA. Finally, plaintiff's subsequent efforts to compel the agency to "reconsider" its position reveal that plaintiff treated Owen's July 1, 1986 letter as a final decision. Of particular note is a letter from plaintiff's counsel to Owen dated July 28, 1986 acknowledging that he was advised that the "final decision" rested with the Technology Branch of the ATF, not the ATF Director. Admin.Rec., Ex. 4.

Based on the foregoing, I find that Owen's letter of July 1, 1986 constitutes a final agency action which triggered the six-year statute of limitations set forth in 28 U.S.C. 2401. Because plaintiff filed this action on May 14, 1993, almost seven years after the date of accrual, its first claim for relief is barred by the statute of limitations. Accordingly, defendants' motion to dismiss plaintiff's first claim for relief is allowed.

2. *Was the ATF's Decision Regarding the 610 "Combination of Parts" Arbitrary and Capricious?* [7]

Of the 1,248 tubes plaintiff sought to register with the April and May notices of 1986, plaintiff argues that 610 of those tubes could be classified as machine guns lawfully possessed prior to May 19, 1986, because it had sufficient parts to constitute a "combination of parts," (and hence, "machine guns" as defined by the NFA) in stock prior to the effective date of the CGA amendments. Section 5845(b) of the NFA clearly contemplates that a combination of parts from which a

---

7. Defendants do not raise a statute of limitations defense with respect to plaintiff's second claim for relief. Based upon my review of the record, I assume that plaintiff's alternative claim is timely

since the Chief of the National Firearms Branch denied plaintiff's request to register 610 of the 1,248 tubes as "combinations of parts" in a letter date May 22, 1989.

machine gun can be assembled constitutes a "machinegun" for purposes of the Act.

Defendants do not dispute that plaintiff had sufficient parts in stock prior to May 19, 1986 to assemble 610 machine guns. Wayne Moran, Chief of the National Firearms Act Branch of the ATF denied plaintiff's request to treat the Form 2 Notices filed before May 19, 1986 for the 1,248 receiver tubes as effective notices for the 610 combinations of parts for two reasons: (1) the Notices identified the firearms as complete machine guns [8] and did not, therefore, properly or "accurately" identify the items plaintiff sought to register; and (2) even if the descriptions were adequate to cover a combination of parts, the facts reveal that at the time the notices were sent in, plaintiff actually only sought to register receivers or frames of machine guns. Admin.Rec., Exs. 41 & 44. Moran advised plaintiff that it could assemble the parts into machine guns, but that plaintiff would have to file new Form 2 notice and any subsequent transfer would be limited to law enforcement agencies under § 922(o ). *Id.*

Plaintiff claims that defendants' position is arbitrary and capricious because there is nothing in the regulations or Notice instructions for completing a Form 2 which imposes a requirement that the machine guns be described as "fully assembled." Plaintiff also contends that further discovery is needed regarding the "policy of ATF prior to May 19, 1986 and its effect on the conduct of ATF in dealing with these firearms after that date."

Defendants contend that the Notice description must at least be "accurate," and rely upon 26 U.S.C. 5841 requiring effective notice, and 27 C.F.R. 179.103 which provides that "[e]ach manufacturer qualified under this part shall file with the Director an accurate notice on Form 2," and that such notice "shall" identify tax and license information as well as "the type, model, length of barrel, overall length, caliber, gauge or size, serial numbers," and any other marks of identification.

■ Judicial review of an agency action under the APA is limited. Courts may set aside an agency action or conclusion if found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706. A court may set aside an agency action if there is no "rational basis" for the agency's decision, *Friends of the Earth v. Hintz,* 800 F.2d 822, 830–31 (9th Cir.1986), or where there is a "clear error of judgment." *Gilbert Equipment Co., Inc. v. Higgins,* 709 F.Supp. 1071, 1083 (S.D.Ala. 1989), *aff'd,* 894 F.2d 412 (11th Cir.1990). In cases where agency judgment involves "technical expertise," or where specialists express conflicting views, judicial review is limited to an assessment of whether the agency conducted a reasoned evaluation of the relevant information and reached a decision that, although perhaps disputable, was not arbitrary or capricious. *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1571, 1576 (9th Cir. 1993). However, a court may not "rubber stamp" an agency action that "fails to give a proper construction of a pertinent statute or that frustrates an underlying congressional policy." *American Fed. of Gov. Employees v. F.L.R.A.,* 802 F.2d 1159, 1161 (9th Cir. 1986).

■ In this case, I have carefully reviewed the administrative record and the pertinent statutes and regulations and find that the ATF's refusal to treat plaintiff's Form 2 notices for 1,248 machine gun receivers as an effective notice for 610 combinations of machine gun parts is neither arbitrary nor capricious. Although plaintiff correctly notes that there is no specific regulation or requirement that it identify the registered items with precision, I find that the agency was well within its discretion in concluding that the notice form and the factual record were insufficient to register 610 machine gun combinations of parts effective prior to May. The pertinent ATF regulations require, at a minimum, that the firearms identified in the notice forms be "accurate" enough to enable an Inspector to identify the items sought to be registered.

In addition, I find that further discovery would not be productive since the administrative record adequately explains the agency's

---

**8.** The notices of April and May, 1986 actually identify the items as "submachineguns."

actions and that the scope of my review of this issue is therefore properly limited to the complete administrative record filed by defendants on August 30, 1993. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); and *Friends of the Earth,* 800 F.2d at 828–29.[9]

### CONCLUSION

Based on the foregoing, I find that plaintiff's first claim for relief is barred by the applicable 6–year statute of limitations and that defendants are entitled to summary judgment against plaintiff's second alternative claim for relief under the APA. Accordingly, defendants' motion to dismiss (# 7–1) is GRANTED as to plaintiff's first claim for relief with prejudice as no amendment will cure the defect, and defendants' alternative motion for summary judgment (# 7–2) is GRANTED as to plaintiff's second claim for relief.

---

9. Although plaintiff raises the "rule of lenity," I see no application of the rule to this case as I fail to see that the definition of a "machinegun" is in dispute. Defendants concede that a combination of parts constitutes a "machinegun" as defined by 26 U.S.C. § 5845(b).