**Trisha T. PRITIKIN, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY; John D. Wagoner, in his official capacity as Manager of the U.S. Department of Energy Richland Operations; and Federico Peña, in his official capacity as Secretary of the U.S. Department of Energy, Defendants.**

No. CY–98–3049–EFS.

United States District Court, E.D. Washington.

March 31, 1999.

Tom Floulds, for plaintiff.

Pamela DeRusha, U.S. Attorney's Office, Spokane WA, Yvette Wilkerson–Barron, Robert Foster, argued, U.S. Dept. of Justice, Washington, DC, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SHEA, District Judge.

Before the Court is Defendants' Motion to Dismiss, or Alternatively for Summary Judgment (Ct.Rec.12). The Court heard oral argument on October 7, 1998, in Spokane. The Plaintiff was represented by Tom Foulds, and the Defendants were represented by Pamela DeRusha of the U.S. Attorney's Office, and Yvette Wilkerson-Barron and Robert Foster of the U.S. Department of Justice, with Mr. Foster arguing.

## I. BACKGROUND

The Plaintiff, Trisha Pritikin, has filed a "Complaint for Declaratory Relief and for Order Compelling the Performance of Non Discretionary Duties" pursuant to the Citizen Suit Provisions of 42 U.S.C. § 9659(a)(1) & (2) and the Administrative Procedures Act, 5 U.S.C. §§ 701–04. Ms. Pritikin alleges that the Department of Energy ("DOE") has failed to fulfill its obligation to fund the Medical Monitoring Program and the Exposure Subregistry Program deemed necessary by the Agency for Toxic Substances and Disease Registry ("ATSDR") in 1997. (Ct.Rec.1.)

As the basis for this Court's jurisdiction, Ms. Pritikin cites 42 U.S.C. § 9659(c), the citizen suit provision of CERCLA, and 28 U.S.C. § 1361, which provides an action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the claimant. Ms. Pritikin does not cite the Declaratory Judgment Act, which empowers a court in a case of actual controversy within its jurisdiction to declare the rights of interested parties seeking such a declaration. See 28 U.S.C. § 2201 (1996).

Instead, Ms. Pritikin seeks a declaratory judgment that DOE is liable for the costs of the medical monitoring program under 42 U.S.C. § 9613(g)(2) that will be binding on any subsequent action to recover further response costs or damages. She also seeks an order compelling the Defendants to make budget requests for the medical monitoring program and obtain the funding by "reprogramming budget items committed by them to other programs," and to require the Defendants to disclose to Congress their failure to provide such funding compliance. (Ct.Rec.1.)

By way of background, DOE and ATSDR have been involved in lawsuits related to radioactive emissions at Hanford's Plutonium Production facilities. In 1994, ATSDR decided to initiate various procedures necessary to establish the criteria for a medical monitoring program. In 1997, ATSDR determined that there was a need for a medical monitoring program and disease registry at Hanford.

Ms. Pritikin asserts that she was exposed to Hanford emissions as a resident of the area and suffered considerable damage to her thyroid gland. As an individual allegedly damaged by the emission, she believes that she has the right to and a

need for the ATSDR medical monitoring program. Since ATSDR made its announcement that a medical monitoring program was necessary, ATSDR and DOE have engaged in exchanges of communications regarding the possible funding of that program. There has been no resolution of that funding issue. Ms. Pritikin now seeks to employ the power of the federal court to order such actions as will result in the funding of the ATSDR recommended program.

The Defendants counter that the Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because 42 U.S.C. § 9607(a)(4)(D) creates no private right of action against DOE. Additionally, the Defendants allege that DOE has taken appropriate steps to file the required reports and budget requests and therefore the remaining claims for mandamus should be dismissed as moot. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

After consideration of the materials submitted by the parties and oral argument, this Court concludes that CERCLA does not give Ms. Pritikin a right to sue to recover § 9607(a)(4)(D) costs nor a right to a declaratory judgment that DOE is liable for future costs for the medical monitoring program which ATSDR has concluded is necessary.[1] Accordingly, the Court lacks subject matter jurisdiction and grants the Defendants' Motion for Summary Judgment.[2]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When considering a motion for summary judgment, a court may not weigh evidence or determine the truth of a matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the Court's function is strictly to determine whether there is a genuine issue for trial. *See id.*

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that initial burden has been met, the party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial or judgment may be granted as a matter of law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. This requires that the party present evidence or identify in the record evidence sufficient to establish the existence of a material issue of fact. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. Failure to do so may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *See Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996).

## III. DISCUSSION

This district is not unfamiliar with litigation concerning the continuing efforts to clean up hazardous waste at the Hanford Nuclear Reservation ("Hanford") in Richland, Washington.[3] Two cases in this dis-

---

1. Plaintiff has not named ATSDR as a defendant even though 42 U.S.C. § 9604(i) mandates that the Administrator of ATSDR shall initiate a health surveillance program for a population exposed to a release from a facility when ATSDR has determined that there is a significant increased risk of adverse health affects in humans from exposure to hazardous substances based on ATSDR health assessments and studies. ATSDR made such a determination in 1997. *Cf. Hanford Downwin-*

ders Coalition, Inc. v. Dowdle, 71 F.3d 1469 (9th Cir.1995).

2. In its ruling, the Court considered materials outside of the pleadings in deciding Defendants' Motions. As such, summary judgment standard must be applied. *See Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996).

3. *See In re Hanford Nuclear Reservation Litigation,* 780 F.Supp. 1551 (E.D.Wash.1991).

trict have dealt with different but somewhat related claims to the one at issue. Those cases provide helpful background material on the issue of a citizen's cause of action to recover the costs of medical monitoring programs under CERCLA.

In *Durfey v. E.I. DuPont De Nemours Co.*, private citizens sued private companies operating at Hanford. *See* 59 F.3d 121 (9th Cir.1995). The Plaintiffs claimed a common law right to sue those private companies for the cost of medical monitoring for conditions allegedly caused by a release of radioactive substances in Eastern Washington some years earlier. *See Durfey*, 59 F.3d at 123. On appeal from a district court decision holding the common law medical monitoring claims were barred by 42 U.S.C. § 9613(h) as challenges to ongoing federal agency "removal" or "remedial" actions, the Ninth Circuit reversed finding that medical monitoring costs were not "response costs" under CERCLA.

> This court, relying on the Tenth Circuit analysis in Daigle [4], reasoned that:
>
> The context in which the "monitoring" and "health and welfare" language appears is directed at containing and cleaning up hazardous substance releases ... The specific examples in § 9601(23) are all designed to prevent or mitigate damage to public health by preventing contact between the spreading contaminants and the public. Monitoring long-term health has nothing to do with preventing such contact. In addition, this court reviewed the legislative history behind CERCLA and found that "Congress intentionally deleted all personal rights to recovery of medical ex-

penses from CERCLA," and that ATSDR activities are reimbursed separately from the payment of "response" costs.

*Durfey*, 59 F.3d at 125 (quoting *Price v. United States Navy*, 39 F.3d 1011, 1016–17 (9th Cir.1994), and *Daigle*, 972 F.2d at 1536–37).

The court concluded that claims for costs of medical monitoring programs initiated and conducted by citizens independently of any CERCLA cleanup efforts were not "costs of response" as that term is used in 42 U.S.C. § 9607(a)(4)(B). As such, those claims were not barred by CERCLA § 113(h). Consequently, the court held that the district court had jurisdiction to hear those citizen claims for costs of medical monitoring programs initiated and conducted independently of any CERCLA cleanup effort.[5]

Later that same year in *Hanford Downwinders Coalition, Inc. v. Dowdle*, the Ninth Circuit again faced issues related to CERCLA medical monitoring programs. *See* 71 F.3d 1469 (9th Cir.1995). *Dowdle* contains a lengthy description of the creation of ATSDR as part of CERCLA and provides an excellent analysis of the CERCLA provisions that relate to ATSDR. In that case, a citizens group brought an action seeking injunctive relief requiring ATSDR to begin a health surveillance program for populations exposed to radiation from Hanford. *See id.* at 1471–73. "The plaintiffs alleged that the ATSDR has a mandatory duty under CERCLA § 9604(i)(9) to begin a health surveillance program in the Hanford re-

---

4. *Daigle v. Shell Oil Co.* was a toxic tort case arising from the cleanup at Rocky Mountain arsenal, a CERCLA site in Colorado. *See* 972 F.2d 1527 (10th Cir.1992). In part, the plaintiffs brought CERCLA medical monitoring claims pursuant to 42 U.S.C. § 9607(a)(4)(B). That subsection of CERCLA makes a person who operates the site from which a release of hazardous substances has occurred liable for any other necessary costs of response incurred by any other person consistent with the national contingency plan. The court in *Daigle* held that the medical monitoring

which the plaintiffs sought was not recoverable under CERCLA § 107(a). *See id.* at 1537. It did find, however, "Section 107(a), the liability provision with which we started our analysis above, provides a *government cause of action to recover* § 104(i) ATSDR health assessment costs separately from the cause of action for response costs." *Id.* (emphasis added).

5. *Durfey* was then remanded to the district court where it is pending.

gion. The requested injunction would order the ATSDR to initiate § 9604(i)(9) health surveillance activity, including medical testing and monitoring of individuals exposed to releases of radioactive iodine." *Id.* at 1473. The district court dismissed the action citing 42 U.S.C. § 9613(h) which provides in pertinent part:

> No Federal court shall have jurisdiction under federal law other than under section 1332 of Title 28 ... or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to clean up standards) to review any challenges to removal or remedial actions selected under section 9604.

42 U.S.C. § 9613(h) (1996); *see Dowdle,* 71 F.3d at 1474. That provision "prevents Federal courts from exercising jurisdiction over legal challenges to *ongoing* CERCLA 'removal' or 'remedial' activity." *Dowdle,* 71 F.3d at 1474 (emphasis added).

Plaintiffs in *Dowdle* argued that various provisions of CERCLA related to the powers and responsibilities of ATSDR enabled the court to order ATSDR to initiate a health surveillance program. The court disagreed finding that ATSDR's role in the cleanup was ongoing and stating, "[u]ntil ATSDR makes a § 9604(i)(7)(B)(9) determination, the decision to begin a health surveillance program lies within its discretion. CERCLA's Timing of Review provision [§ 9613(h) ] prevents federal courts from interfering with that discretion." *Id.* at 1483. After a lengthy discussion, the court opined, "[w]e hold that the clear and extensive congressional efforts to integrate ATSDR health assessment and surveillance action into NPL cleanups support the conclusion that the activities at issue in this case fall within the scope of § 9613(h)'s jurisdictional proscription." *Id.* at 1482.

The *Dowdle* decision is informative regarding the issues in this case. In *Dowdle,* the court held that the plaintiffs' action was barred because ATSDR had not yet completed its study to determine whether or not a health surveillance program was necessary. Pursuant to 42 U.S.C. § 9604(i)(9)(A) & (B), a program once initiated must include both periodic medical testing to screen the exposed population for disease and a mechanism to refer for treatment anyone who needs medical attention:

> Where the Administrator of ATSDR has determined that there is a significant increased risk of adverse health effects in humans from exposure to hazardous substances based on the results of a health assessment conducted under paragraph (6), an epidemiologic study conducted under paragraph (7), or an exposure registry that has been established under paragraph (8), and the Administrator of ATSDR has determined that such exposure is the result of a release from a facility, the Administrator of ATSDR shall initiate a health surveillance program for such population. This program shall include but not be limited to—
>
> > (A) periodic medical testing where appropriate of population subgroups to screen for diseases for which the population or subgroup is at significant increased risk; and
> >
> > (B) a mechanism to refer for treatment those individuals within such population who are screened positive for such diseases.

42 U.S.C. § 9604(i)(9)(A) & (B) (1996).

In 1997, ATSDR reached a determination under § 9604(i)(7)(B)(9) that a health surveillance program must be initiated. (Ct.Rec.15.) Ms. Pritikin's claim against DOE is based on the decision of ATSDR that a health surveillance program is necessary per 42 U.S.C. § 9604(i)(9)(A)(B). The claims Ms. Pritikin advances here are different from the claims of the *Durfey* plaintiffs. The court in *Durfey* held the plaintiffs could bring claims for the costs of privately initiated and conducted medical monitoring programs against corporate defendants who were alleged "responsible parties" as that term is used in CERCLA. By comparison, Ms. Pritikin asks this

Court to declare DOE liable for the costs of past ATSDR assessments and to declare DOE liable for future costs of the ATSDR medical monitoring program. Unlike the *Durfey* plaintiffs, Ms. Pritikin has not advanced costs for a private medical monitoring program but asserts a cause of action to recover costs ATSDR has expended or may expend in the future. Ms. Pritikin also asserts a cause of action different from the *Dowdle* plaintiffs. The plaintiffs in *Dowdle* brought an injunctive action against ATSDR seeking to force it to conduct the program which it has now concluded is necessary, while Ms. Pritikin has brought suit against DOE and its administrator, not ATSDR.

As a partial basis for her request, Ms. Pritikin relies upon 42 U.S.C. § 9659(a)(1) & (2) for the declaratory relief she seeks. That section provides criteria for the citizen suit provisions of CERCLA:

> Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf—
>
> (1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter (including any provision of an agreement under section 9620 of this title, relating to Federal facilities); or
>
> (2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency and the Administrator of the ATSDR) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an act or duty under section 9620 of this title (relating to Federal facilities), which is not discretionary with the President or such other officer.

> . . . .
>
> (c) Relief
>
> The district court shall have jurisdiction in actions brought under subsection (a)(1) of this section to enforce the standard, regulation, condition, requirement, or order concerned (including any provision of an agreement under section 9620 of this title), to order such action as may be necessary to correct the violation, and to impose any civil penalty provided for the violation. The district court shall have jurisdiction in actions brought under subsection (a)(2) of this section to order the President or other officer to perform the act or duty concerned.

42 U.S.C. § 9659 (1996).

■ Ms. Pritikin argues that the "duty" and "requirement" enforceable under this provision arise from DOE's liability for the costs incurred by ATSDR for medical monitoring programs to be carried out as provided in § 9607(a)(4)(D). In her complaint, Ms. Pritikin asserts that "[t]he [DOE] has failed to fulfill its obligation to fund the medical monitoring Program and the Exposure Subregistry Program deemed necessary by the [ATSDR]." (Ct. Rec.1, ¶ 1.) Ms. Pritikin further states,

> Since the DOE owned the Hanford facility which emitted the hazardous substances which created the significant increased risk of adverse health effects, the DOE is liable under 42 U.S.C. § 9607(a)(2) and is specifically liable under § 9607(a)(4), subsection (D) for the costs of any health assessment or health effects study carried out by the ATSDR under section 9604(i). Thus the DOE is liable for the costs of funding the ATSDR medical monitoring and disease registry programs.

(Ct.Rec.1, ¶ 25.) Ms. Pritikin contends that given this alleged liability on the part of DOE, § 9607(a)(4)(D) together with § 9613(g)(2) allow her to seek a declaratory judgment on DOE liability for future costs of such programs. No cases cited by

the Plaintiff support that position,[6] nor has the Court found any other authority in support of her contentions.

Plaintiff believes that § 9607(a)(4)(D) creates the § 9659(a)(1) "requirement" or a § 9659(a)(2) "duty". Section 9607 liability, provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

. . . .

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

. . . .

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a) (1996).

Ms. Pritikin asserts that since this provision makes DOE liable as a "responsible party" for the medical monitoring program which ATSDR has determined must be initiated, there is, therefore, a "requirement" or "duty" which she can enforce under § 9659 citizen suit provisions. This Court disagrees. Section 9607(a)(4)(D) does not give Ms. Pritikin a cause of action under § 9659 to establish the liability of DOE for the cost of any health assessment or health effects study carried out by ATSDR under § 9604(i). That subsection was added to CERCLA at the time of the 1986 SARA amendments and provides a government cause of action to recover § 9604(i) ATSDR health assessment costs

separate from a cause of action for response costs. *See Daigle,* 972 F.2d at 1537. That view was shared by the court in *Durfey* when it noted, "the government is able to recover costs incurred by the ATSDR under a separate cause of action." 59 F.3d at 125.[7] As discussed earlier, by its very terms, § 9613(g) requires a suit to recover § 9607 costs. It is only in such an action that the court would have the power to declare future cost liability of the parties to that action. *See* § 9613(g)(2).

Therefore, it is this Court's ruling that § 9607(a)(4)(D) cannot be read together with § 9659(a)(1) & (2) to permit Ms. Pritikin to seek declaratory judgment on liability pursuant to 42 U.S.C. § 9613(g)(2). § 9607(a)(4)(D) enables ATSDR to bring such an action to recover the costs of health surveillance programs, not private citizens.[8] With no cause of action existing under § 9607(a)(4)(D) and no violation of a CERCLA requirement, Ms. Pritikin's citizen suit under § 9659 cannot be brought. *See* 42 U.S.C. § 9613(h)(4). Thus, this Court has no jurisdiction to enter a declaratory judgment and afford Ms. Pritikin the relief she seeks.

**A. THE IMPACT OF 42 U.S.C. § 9620**

█ Ms. Pritikin asserts that under § 9620(e) DOE is "required" to enter into interagency agreements ("IAG") to fund ATSDR's public health activities at DOE sites. Plaintiff specifically cites § 9620(e)(2). However, the term "The Administrator" as used therein refers to the administrator of the Environmental Protection Agency, not the administrator of the ATSDR. *See* 42 U.S.C. § 9601(2) ("The term 'Administrator' means the Administrator of the United States Environmental Protection Agency."). The docu-

---

**6.** *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283 (N.D.Cal.1984), and cases cited therein do not hold that a private citizen can bring an action to recover costs expended by the government.

**7.** Congress deleted all personal rights to recovery of medical expense from CERCLA.

*See Durfey,* 59 F.3d at 125, and *Dowdle,* 71 F.3d at 1479.

**8.** Since ATSDR is not a defendant, the Court offers no opinion on the correctness of the government's interpretation of *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). (Ct.Rec.13.)

ments attached to the complaint and the various pleadings submitted by the parties in connection with the Defendants' motions record the exchange between DOE and ATSDR regarding the funding of ATSDR's public health activities. ATSDR and DOE did enter into a "Memorandum of Understanding" in 1992, (Ct.Rec.13, Ex. B) as well as a number of IAG's thereafter (Ct.Rec.17, Ex. F) which provided advanced funding of ATSDR's public health activities.

Ms. Pritikin's position is that § 9620(e) "requires" DOE to enter into IAG's with ATSDR. No authority is cited by plaintiff in support of her position. A careful reading of § 9620 persuades this Court that there are many complex issues between governmental agencies such as ATSDR and DOE regarding their respective responsibilities and duties as well as the necessary budgeting to carry out those responsibilities, many of which require congressional approval. This Court does not believe that § 9620 provides Ms. Pritikin with a basis for asserting a § 9659(a)(1) or (2) cause of action against DOE.

## B. THE ADMINISTRATIVE PROCEDURES ACT

As an alternative to the CERCLA statutory approach, Ms. Pritikin believes that the DOE actions amount to final agency action subject to the Administrative Procedures Act ("APA"). See 5 U.S.C. § 704. The APA authorizes judicial review of agency actions which are reviewable by statutory language as well as final agency action for which there is no other remedy in court. See id. These elements must be present for the court to have subject matter jurisdiction. See FTC v. Standard Oil Co. of Calif., 449 U.S. 232, 248, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). Courts must consider a number of factors in determining whether an agency act is final for purposes of review, including whether the action challenged is a "definitive statement of an agency's position." See Mt. Adams

Veneer Co. v. United States, 896 F.2d 339, 343 (9th Cir.1990).

The documents submitted by the Defendants persuade this Court that DOE has not engaged in "final agency action" as that term is utilized under the APA, nor has it given a "definitive statement of an agency's position" which would allow judicial review. (Ct. Rec. 13, Ex. A, B, & C.) Additionally, documents submitted to this Court reflect that DOE has filed the necessary § 9620 reports and has officially informed Congress of this ATSDR funding issue and sought reprogramming of funds for ATSDR activities. Final action subjecting the decisions of DOE to judicial review has not yet been taken and therefore there is no subject matter jurisdiction under 5 U.S.C. § 704.

Based on the foregoing analysis, the Court grants the Defendants' Motion for Summary Judgment. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (**Ct. Rec. 12**) is **GRANTED**.

2. All other pending motions are **DENIED as moot**.

3. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

IT IS ORDERED. The District Court Executive is directed to enter this order, prepare a Judgment accordingly, provide copies to counsel, and close this file.